# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003



EXHIBIT
B-4

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1.  IN GENERAL.  In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement.  The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto.  Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work.  No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void.  It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement.  All contributions shall be paid in the manner and form required by the Trustees.

Section 2.  DEFAULT IN PAYMENT OF CONTRIBUTIONS.  Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments.  The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity.  Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment.  The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed.  All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof.  In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied.  The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund.   The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs.  The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees.  At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject.  In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency.  The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3.   REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.
The Employers shall make all reports on contributions required by the Trustees.  Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust.  The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports.  All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records.  The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive.  Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

## ADDENDUM A

## RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
## AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

12.  Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13.  If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above.  However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above.  In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.  The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1.  Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2.  Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union.  In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records.  The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof.   Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3.  When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied.  When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer.  If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept.  Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct.  All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4.  An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

2

# LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers**. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely, payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

1

4. **Employers Subject to Special Audits**. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers**. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers**. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers**. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

2

May-09-2007  12:25pm  From-Laborers Pen & Wel Funds                    +                    T-551  P.008/008  F-015

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND
GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

The following is added as Section (4) to Article VI, "Employer Contributions":

"Section 4.  ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)  EMPLOYER OWNED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)  EMPLOYER OPERATED BY DEADBEAT EMPLOYER.  Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)    PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION.  The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund.  The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section.  Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable.  Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)    MISCELLANEOUS PROVISIONS.  The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer. "

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

CHARLES J. GALLAGHER     DATE

JAMES P. CONNOLLY     9/19/06
                      DATE

ALAN ESCHE     9/19/06
               DATE

RANDY DALTON     9/19/06
                 DATE

RICHARD E. GRABOWSKI     9/19/06
                         DATE

MARTIN FLANAGAN     9-19-06
                    DATE

DAVID H. LORIG     9/19/06
                   DATE

LIBERATO NAIMOLI     9/19/06
                     DATE

DENNIS MARTIN     9/19/06
                  DATE

SCOTT PAVLIS     9/19/06
                 DATE

TIM J. SCULLY     9/19/06
                  DATE

FRANK RILEY     9/19/06
                DATE

4

AGREEMENT AND DECLARATION OF TRUST
ESTABLISHING
THE CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
TRAINING TRUST FUND

THIS AGREEMENT AND DECLARATION OF TRUST, made and entered into as of the 1st day of June, 1986 by and between THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., representing its affiliated Local Unions and the members thereof (the "Council") and the BUILDERS' ASSOCIATION OF CHICAGO, the UNDERGROUND CONTRACTORS ASSOCIATION, and the ILLINOIS ROAD BUILDERS' ASSOCIATION, and all other employer associations (the "Associations") who have hereto bargained or may hereafter bargain or enter into collective bargaining agreements or other agreements with the Union, its local affiliates, or with representatives of this Trust, for and on behalf of themselves and their respective members who by virtue of their said membership or otherwise are parties to collective bargaining agreements with the Union or any of its local affiliates or are parties to this Agreement or are otherwise bound to the provisions hereof as hereinafter provided, and other employers in the building and construction industry who may not be members of any association but who are included in the term "Employers" (as defined in Section 2 of ARTICLE I) and agree to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I;

WITNESSETH:

(1) The Employers are parties to a collective bargaining agreement, or supplements thereto, with the Council which requires

EXHIBIT
B-5

Employer contributions of a certain sum per hour per Employee to a training fund provided in a program to be created for participating employees and established by this trust agreement.

(2) the parties have agreed that such contributions shall be payable to and be deposited in the Trust Fund created and established by this Trust Agreement.

NOW, THEREFORE, in consideration of the premises and in order to establish and provide for the maintenance of said Trust Fund to be known as "THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND" hereinafter referred to as the "Trust Fund," it is mutually understood and agreed as follows.

## ARTICLE I

### Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Trust Agreement.

Section 1. WRITTEN AGREEMENT

The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to this Trust together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, memoranda of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement.

-2-

signatory association, nor any officers, agent, employee or committee member of the Employers, or of any signatory association shall be liable to make contributions to the Fund or be under any other liability to the Fund or with respect to the Training Program, except to the extent that he may be an individual Employer required to make contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee, as hereinafter provided. The liability of any individual Employer to the Fund, or with respect to the Training Program shall be limited to the payments required by any written agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the contributions due from other individual Employers with respect to the operations of such Employers. The individual Employers shall not be required to make any further payments or contributions to the cost of the operations of the Fund or of the Training Program, except as provided in Section 8 of this Article.

Section 6. Neither the Employers, any signatory association, any individual Employer, the Council, nor any employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 7. Contributions to the Fund shall be due and payable to the principal office of the Fund and shall be made in regular monthly installments except as otherwise herein provided in Section 9 of this Article II. Each contribution to the Fund shall be made promptly, and in any event on or before the 10th day

of the calendar month in which it becomes due and payable.  Each monthly contribution shall include all payments which have accrued in the interim for work performed up to the close of the Employer's payroll period ending closest to the last day of the preceding calendar month.  Each monthly contribution shall be accompanied by a report in a form prescribed by the Board of Trustees.

Section 8.  The parties recognize and acknowledge that the regular and prompt payment of Employer contributions and reports to the Fund are essential to the maintenance of the Fund and that it would be extremely difficult, if not, impracticable, to fix the actual expense and damage to the Fund and to the Training Program which would result from the failure of an Employer to pay such monthly contributions in full within the time provided above. Therefore, if any Employer is delinquent in remitting its contributions within the time specified in Section 7 of this Article, the amount of damage to the Fund and Training Program resulting from failure to make reports or pay contributions within the time above specified shall be presumed to be the sum of ten percent (10%) of the amount of the contribution due for each delinquent report or contribution.  This amount shall be added as liquidated damages upon the day immediately following the date on which the report or the contribution or contributions become delinquent.  Delinquent contributions and penalties shall also bear interest at a rate up to the prime rate of interest as recog- nized by the First National Bank of Chicago or such other lawful amount as determined by the Trustees from the due date until

delinquency is totally satisfied.  The Trustees, however, in their discretion, for good cause (Trustees shall have sole right to determine what shall constitute good cause) shall have the right and power to waive all or any part of any sums due the Fund as liquidated damages.  Failure by any Employer to make the required payments hereunder shall be deemed a breach of the written agreement by the Employer and be subject to economic action by the Council in addition to the other remedies as provided herein.  The Trustees may, at their option, also take legal action to collect all delinquent amounts owing to the Fund, and parties agree that if the delinquent account of any Employer is referred to an attorney for collection, such Employer shall immediately become liable for a reasonable sum for the attorneys' fee together with an amount equal to all costs incurred by the Trustees in commencing or prosecuting legal action in any Court.  In such legal action, venue shall be laid at Cook County, Illinois, as the Fund is administered in such county.

Section 9.  In the case of certain Employers who have defaulted on payments in the past, or who otherwise give the Trustees reasonable cause to feel insecure as to future contributions, the Trustees shall have the power to require a bond for the payment of contributions.

ARTICLE III

### Board of Trustees

Section 1.  Except as otherwise specifically provided, the Fund shall be operated and administered by a Board of Trustees whose membership shall consist of three persons appointed as trustees by the Association (known as the "Association Appointed

# RICHARD J. WOLF AND COMPANY, INC.

Post Office Box 591
Palos Park, Illinois 60464
(708) 923-0909
Fax (708) 923-0910

® ⬢ 433

April 9, 2008

Board of Trustees of the Various
Fringe Benefit Funds of the
Laborers Pension & Welfare Funds

RE:    Allstar Construction (34754)

We have performed a fringe benefit contribution compliance audit of Allstar
Construction, for the period from August 1, 2007 through March 31, 2008.
The audit encompassed the comparison of individual earnings records to
certain payroll tax and fund reports and a review of the general
disbursement records.

The comparison and review indicate that the employer has not complied with
its fringe benefit contribution requirements and owes the following amounts:

| FUND | AMOUNT |
|------|--------|
| WELFARE | $   382.56 |
| PENSION | 272.64 |
| TRAINING | 10.56 |
| TOTAL | $   665.76 |

In addition, the employer could not provide proof of a current wage and fringe benefit bond.

RICHARD J. WOLF AND COMPANY, INC.

EXHIBIT
B-6

LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

ALLSTAR CONSTRUCTION  #34754

ADDITIONAL WELFARE - PENSION & TRAINING HOURS  6/07 - 5/08

JUN 07 to MAY 08

| S.S. # | Flags | Type | 2007 Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2008 Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| RYBACKI, ROB 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 | # | Hours | - | - | - | 24.00 | - | - | - | - | - | - | - | - | 24.00 |
| | | Gross $ | - | - | - | - | - | - | - | - | - | - | - | - | $  - |
| TREVINO, JOSE 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 | # | Hours | - | - | - | 24.00 | - | - | - | - | - | - | - | - | 24.00 |
| | | Gross $ | - | - | - | - | - | - | - | - | - | - | - | - | $  - |

| | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TOTAL HOURS | | | - | - | - | 48.00 | - | - | - | - | - | - | - | - | 48.00 |
| TOTAL GROSS $ | | | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - |

**Amount Due To Funds:**

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| WELFARE | $  - | $  - | $  - | $ 382.56 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 382.56 |
| PENSION | $  - | $  - | $  - | $ 272.64 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 272.64 |
| TRAINING | $  - | $  - | $  - | $ 10.56 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 10.56 |
| TOTAL | $  - | $  - | $  - | $ 665.76 | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $  - | $ 665.76 |

| Rates: | 6/1/07 | to | 5/31/08 |
|---|---|---|---|
| WELFARE | 7.97 | LMCC | |
| PENSION | 5.68 | CAICA | |
| TRAINING | 0.22 | DUES | |
| LECET | | | |

4/8/2008

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

ALLSTAR CONSTRUCTION  #34754

RICHARD J. WOLF AND COMPANY, INC.

## SUMMARY REPORT TOTAL

|  | ADDITIONAL | UNREPORTED | TOTAL |
|---|---|---|---|
| WELFARE | $ 382.56 | $ - | $ 382.56 |
| PENSION | $ 272.64 | $ - | $ 272.64 |
| TRAINING | $ 10.56 | $ - | $ 10.56 |
| TOTAL | $ 665.76 | $ - | $ 665.76 |

4/8/2008

# LABORERS' DISTRICT COUNCIL OF CHICAGO - CAICA ASSOCIATION

ALLSTAR CONSTRUCTION   #34754

RICHARD J. WOLF AND COMPANY, INC.

## ** GRAND TOTAL **

| | | |
|---|---|---|
| **WELFARE** | $ | 382.56 |
| **PENSION** | $ | 272.64 |
| **TRAINING** | $ | 10.56 |
| **TOTAL** | $ | 665.76 |

Date File Received _____     Date Audit Performed _____

Auditor's Name _____

DAN COAKLEY _____     Date Audit Submitted     April 9, 2008

**RICHARD J. WOLF AND COMPANY, INC.**
**Audit Fact Sheet and Contract Compliance**
**Audit Work Program**

A.  EMPLOYER NAME:     ALLSTAR CONSTRUCTION
    ADDRESS:           1007 LONGAKER
    CITY / STATE       NORTHBROOK, IL.
    ZIP CODE           60062
    PHONE #            224-875-0380
    TAXPAYER I.D. #    99-9999999

B.  Contacts Name        KEVIN BROWN          Title  OWNER
    Person Fund is to Contact                 Title

C.  Organization Type       X   Sole Proprietor
                            ____ Partnership
                            ____ Corporation

D.  Ownership Principals Name                                    Title
    1   ___ KEVIN BROWN _____     ____ %    OWNER
    2   _____     ____ %    _____
    3   _____     ____ %    _____
    4   _____     ____ %    _____

E.  Gross Annual Dollar Volume   $   $46,000.00

F.  Does Employer have interests in other related operations?   ____ Yes   X   No
    If yes, describe

G.  Is employer a member of any Trade Organization/Association?   ____ Yes   X   No
    If yes, list names of same

H.  Briefly describe employer's office and/or yard space?   HOME

    Estimated Value of Same

I.  Audit Site (if different from employer's address)

J.  Audit Period              8/01/07-3/31/08
    (if different from Letter of Introduction, explain why?)

K.  The general condition of the accounting records were:   GOOD

L.  Accounting records reviewed (please list)   TWO PAYROLL SHEETS, FUND REPORTS,
    CHECK BOOK

RICHARD J. WOLF AND COMPANY INC.
Audit Fact Sheet and Contract Compliance
Audit Work Program

Page 2 of 7

4/9/2008

M. All required accounting records were available with the exception of     NONE
_____
_____
_____
_____

N. Were any extraordinary auditing expenses incurred while performing this audit?
Yes _____     No   X      If yes Please Explain _____
_____
_____
_____

O. State findings and briefly describe the nature of the delinquency, if any

| Fund | Amount | Reason |
|------|--------|--------|
| CHICAGO LABORERS | 48.00 | ADDITIONAL HOURS |
| | | |
| | | |
| | | |
| | | |

P. Additional Comments     THE COMPANY HAS TWO EMPLOYEES. THE OWNER OF THE COMPANY DOES
ALMOST ALL OF THE WORK HIMSELF. I RECEIVED A JOB LIST FROM THE CONTRACTOR FOR 2007 AND 2008. THE
LIST FOR 2007 HAD GROSS REVENUES OF 46,000. THIS AMOUNT EQUALED THE FIGURE PLACED ON LAST YEARS
TAX RETURN. THIS JOB LIST HAD VERY LITTLE WORK DONE IN ILLINOIS. THE CONTRACTOR PAID THE CHICAGO
DISTRICT COUNCIL FOR WORKING DUES BUT DID NOT PAY THE PENSION AND WELFARE FUND.
_____
_____
_____
_____
_____
_____
_____
_____

Q. Bank Accounts     _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

R. Type of Company (general, sub, pipeline, etc.)     _____
_____

S. Current "Certified Payroll Projects" as follows:

| Job Name | Location | Audit Status | Contract # |
|----------|----------|--------------|------------|
| | | | |
| | | | |

5/19/2008

# LABORERS' PENSION & WELFARE FUNDS

**AUDIT**

EMPLOYER   **ALLSTAR CONSTRUCTION**    CODE   **34754**

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT:

| | HOURS | WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMACC | RATE | IECA | RATE | CAICA | RATE | LECET | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1-07 - 3-31-08 ADDITIONAL HOURS | | | | | | | | | | | | | | | | | | | |
| 1-07 - 3-31-08 | 48.00 | 382.55 | 7.97 | 272.64 | 5.68 | 10.56 | 0.22 | | | | | | | | | | | | 665.76 |
| MEN NOT REPORTED | | | | | | | | | | | | | | | | | | | |
| SUBTOTAL | 48.00 | 382.55 | | 272.64 | | 10.56 | | | | | | | | | | | | | 665.76 |
| 20% PENALTIES | | 76.51 | | 54.53 | | 2.11 | | | | | | | | | | | | | 133.15 |
| AUDIT COSTS | | 300.00 | | 300.00 | | | | | | | | | | | | | | | 600.00 |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | | | |
| ACCUM. PENALTIES | | | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | 14.16 | | 10.09 | | 0.38 | | | | | | | | | | | | | 24.63 |
| TOTAL DUE | | 773.23 | | 637.26 | | 13.05 | | | | | | | | | | | | | 1,423.54 |

EXHIBIT B-7

Pg : 2

05-19-08 10:25a   LABORS FIELD DEPT   17083467295   FROM   FAX NO.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LABORERS' PENSION FUND et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No. 07 C 6422** |
| **v.** | ) | |
| | ) | **Judge BUCKLO** |
| **KEVIN D. BROWN, d/b/a ALLSTAR** | ) | |
| **CONSTRUCTION.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF CHARLES INGRASSIA

I, CHARLES INGRASSIA, declare and state as follows:

1.      I am Funds Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Funds"), Plaintiffs in the above-referenced action.  This Declaration is submitted in support of the Funds' Motion for Summary Judgment against Kevin D. Brown, d/b/a Allstar Construction.

2.      Shareholders of the law firm of Allison, Slutsky & Kennedy, out-of-house collection counsel for the Laborers' Funds, bill the Laborers' Funds at a rate of $175.00 per hour.  Affiant, as in-house counsel for the Funds has first-hand knowledge that the hourly rate of $175.00 has been found reasonable and has been awarded by many courts in collection proceedings.

3.      In-house counsel Patrick T. Wallace received a Bachelor of Arts Degree from the University of Illinois at Urbana- Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995.  He was admitted to the bar of the



EXHIBIT
C

State of Illinois in November 1995 and to the bar of the United States District Court for

the Northern District of Illinois in December 1995. He has also been admitted to the bar

of the United States District Court for the Central District of Illinois. He was admitted to

the Trial Bar of the Northern District of Illinois on September 20, 2000. From November

1995 to August 2000 he practiced labor and employment law as an associate at the law

firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur &

Eagle). In September 2000, he became Funds Counsel for the Laborers' Pension Fund and

Laborers' Welfare Fund for the Health and Welfare Department of the Construction and

General Laborers' District Council of Chicago and Vicinity.

4.    Jerrod Olszewski, in-house counsel for the Chicago Funds, received a

Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree

from the John Marshall Law School in 2002. He was admitted to the bar of the State of

Illinois in May, 2002, and to the bar of the United States District Court for the Northern

District of Illinois in May, 2002. From May, 2002 to December, 2004, he practiced labor

and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein

& Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of my

work being spent representing the Laborers' Funds. In December, 2004, he became in-

house counsel for the Funds.

5.    Christina Krivanek received a Bachelor of Arts Degree from The Ohio

State University in 2002 and a Juris Doctor Degree from the DePaul University College

of Law in 2005. She was admitted to the bar of the state of Illinois in November 2005

and to the bar of the United States District Court for the Northern District of Illinois in

January 2006. In January 2006, she became in-house counsel for the Laborers' Pension

Fund and Laborers' Welfare Fund for the Health and Welfare Department of the

Construction and General Laborers' District Council of Chicago and Vicinity. Based on

the foregoing, $175.00 represents a fair and reasonable market rate for her in-house legal

services to the Funds in this matter.

6.      Amy N. Carollo received a Bachelor of Arts Degree from Illinois State

University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and

a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar

of the State of Illinois in November of 2005 and to the bar of the United States  District

Court for the Northern District in January 2006. In March 2006, she became in-house

counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and

Welfare Department of the Construction and General Laborers' District Council of

Chicago and Vicinity. Based on the foregoing, $175.00 represents a fair and reasonable

market rate for her in-house legal services to the Funds in this matter.

7.      Charles Ingrassia received a Bachelor of Science Degree from Radford

University in 2002 and a Juris Doctor from the University of Illinois College of Law at

Urbana-Champaign in 2006. I was admitted to the bar of the State of Illinois in

November of 2006 and to the bar of the United States District Court for the Northern

District in July 2007. In July 2007, I became in-house counsel for the Laborers' Funds.

8.      Based on the foregoing, $150.00 represents a fair and reasonable market

rate for my in-house legal services to the Funds in this matter.

9.      Exhibit C-1 attached hereto sets forth the time expended to date by in-

house counsel on this matter. As set forth in that Exhibit, we have expended 11.40 hours

totaling $2,422.50 in attorneys' fees and $464.60 in costs totaling $2,887.10.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: _5 - 20 - 2008_

_____
Charles Ingrassia

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL  60154


Invoice submitted to:
Allstar Construction


May 19, 2008


Invoice #10076


Professional Services

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 11/5/2007 CI | Draft complaint, research corporate status, via smart links, speak with dues and Jim Fosco. Decide to hold off filing the complaint | 1.30 150.00/hr | 195.00 |
| 11/13/2007 CI | Finish complaint and confer with JO about recent dues payments. Update referral chart and do memo to file. | 1.00 150.00/hr | 150.00 |
| PGL | Preparation for exhibits for complaint | 0.30 75.00/hr | 22.50 |
| 11/26/2007 CI | Review returned summons; search for a new address to serve Kevin Brown and give to JAS. | 0.50 150.00/hr | 75.00 |
| 1/3/2008 CI | Email Jean re: email sent by Kevin Brown | 0.30 150.00/hr | 45.00 |
| 12/28/2007 CI | Draft Motion for Order of Default and to Compel an Audit; Form Affidavit and Proposed Order | 1.20 150.00/hr | 180.00 |
| CI | Draft letter to Kevin Brown | 0.80 150.00/hr | 120.00 |
| 1/16/2008 CI | Draft Motion for Rule to Show Cause; Put togetehr Attachements  and files | 1.50 150.00/hr | 225.00 |
| 1/18/2008 CI | Prove-up court call; status memo | 1.20 150.00/hr | 180.00 |
| 1/23/2008 CI | Letter to Kevin Brown re: new court date and audit order | 0.50 150.00/hr | 75.00 |



EXHIBIT
C-1

Allstar Construction                                                                                        Page    2

|  |  | Hrs/Rate | Amount |
|---|---|---|---|
| 1/30/2008 CI | Speak with Kevin Brown | 0.20<br>150.00/hr | 30.00 |
| 2/12/2008 CI | Speak with Jim Fosco re: note from company | 0.10<br>150.00/hr | 15.00 |
| 2/13/2008 CI | Fax demand letter to JF, Conference with JO | 0.60<br>150.00/hr | 90.00 |
| 3/25/2008 CI | Speak with Kevin Brown, call Wolfe's office to arrange audit, speak with JF | 0.50<br>150.00/hr | 75.00 |
| 3/26/2008 CI | Motion for Rule to Show Cause hearing, update status memo | 1.00<br>150.00/hr | 150.00 |
| 3/18/2008 CI | draft and file Motion for Rule to Show Cause, Conference with JF | 1.50<br>150.00/hr | 225.00 |
| 4/2/2008 CI | Speak with Bucklo deputy; Verity prove-up has been moved  back | 0.30<br>150.00/hr | 45.00 |
| 4/7/2008 CI | Call Nolte's office to make sure audit was scheduled | 0.10<br>150.00/hr | 15.00 |
| 4/9/2008 CI | Motion for Rule to Show Cause Hearing; Status Memo | 0.80<br>150.00/hr | 120.00 |
| 4/16/2008 CI | Speak with Wolfe re: audit status | 0.10<br>150.00/hr | 15.00 |
| 4/21/2008 CI | Draft and send letter to Kevin Brown re: audit | 0.50<br>150.00/hr | 75.00 |
| 5/16/2008 CI | Draft Motion for Entry of Default Judgment | 2.00<br>150.00/hr | 300.00 |

|  | For professional services rendered | 16.30 | $2,422.50 |
|---|---|---|---|

Additional Charges :

| 11/13/2007 | Photocopies of Complaint, etc. | 9.60 |
|---|---|---|
|  | Filing fee. | 350.00 |
| 11/16/2007 | Attempted service of Summons. | 45.00 |
| 11/29/2007 | Service of Summons and Complaint. | 60.00 |

| | Total additional charges | $464.60 |
|---|---|---|

Allstar Construction                                                                                          Page      3

|                              | Amount |
|------------------------------|--------|
| Total amount of this bill    | $2,887.10 |
| Balance due                  | $2,887.10 |

### Timekeeper Summary

| Name              | Hours | Rate   | Amount    |
|-------------------|-------|--------|-----------|
| Charles Ingrassia | 16.00 | 150.00 | $2,400.00 |
| Paralegal         | 0.30  | 75.00  | $22.50    |

5/19/2008              Laborers Pension and Welfare Funds
10:09 AM            Billing Worksheet Invoice Summary            Page    1

| Client<br>Last bill<br>Last charge | Billable:<br>Fees<br>Costs<br>Hours | Unbillable:<br>Fees<br>Costs<br>Hours | Interest<br>Fin charge<br>Tax fees<br>Tax costs | Payments<br>Credits<br>Wrt offs<br>Refunds | Prior bal<br>New charges<br>New A/R<br>New bal |
|---|---|---|---|---|---|
| Allstar Construction | | | | | |
| | 2422.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| 5/16/2008 | 464.60 | 0.00 | 0.00 | 0.00 | 2887.10 |
| 10076 | 16.30 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 2887.10 |
| | | | | | |
| Grand Total | 2422.50 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 464.60 | 0.00 | 0.00 | 0.00 | 2887.10 |
| | 16.30 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | 0.00 | 0.00 | 2887.10 |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney of record certifies that he caused a copy of the foregoing Motion for Default Judgment in Sum Certain to be served upon the following person on May 20, 2008, via U.S. First Class Mail, postage pre-paid:

Kevin Brown, d/b/a Allstar Construction
1007 Longaker
Northbrook, Illinois 60062

<u>/s/ Charles Ingrassia</u>